**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**ALEJANDRO DE JESUS-GRANADA**
        **Petitioner**

        **v.**

**UNITED STATES OF AMERICA**
        **Respondent**

**Civil No. 97-1650(CCC)**

[Related to Criminal No. 95-0213(CCC)]

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Now before the Court is Petitioner Alejandro De Jesús-Granada's ("De Jesús")

Motion to Vacate, Set Aside or Correct Sentence by a Person Under Federal Custody

pursuant to 28 U.S.C. §2255 (**Docket No. 2**). For the reasons set forth below, this

Magistrate Judge **RECOMMENDS** that the petition be **DENIED**.

### I. Procedural Background

De Jesús filed his § 2255 Petition on April 29, 1997 (**Docket No. 2**).  In his

petition De Jesús raises, in essence, the following grounds for habeas relief:

> 1. Whether the sentencing court complied with the Federal Rules of Criminal Procedure, when De Jesús was not provided with psychological counseling sought and requested in the Presentence Investigative Report.
>
> 2. Whether the Court erred in accepting De Jesús' guilty plea, when the government and the probation office had factual knowledge of De Jesús' mental incompetence and that De Jesús had been seeking psychiatric counseling since the time of this arrest.
>
> 3. Whether the Court can review de novo alleged sentencing errors such as the denial of sentencing adjustments given De Jesús' "minor participation" and "cooperation with government."



> 4. Whether De Jesús is entitled to a sentence reduction or adjustment given the existence of extraordinary mitigating circumstances.

De Jesús contends that he was not mentally competent at the time he pled guilty because of lasting effects resulting from three separate encounters he had with extraterrestrial creatures. These encounters allegedly occurred prior to the time he committed the crime to which he pled guilty.

The government responded to petitioner's motion asserting that grounds 1, 2 and 4 regarding alleged sentencing and procedural defects were procedurally defaulted by De Jesús as he did not raise these issues on direct appeal (**Docket No. 7**). The government also contends that the appellate court actually decided Ground 3 (dealing with sentencing adjustments) finding the trial court did not err in denying De Jesús' requested sentencing adjustment for his alleged minor participation and for a departure for substantial cooperation with the government (**Docket No.7**).

Thereafter, the District Court entered an opinion finding that De Jesús grounds his request for relief on the following claims of error by the Court: (1) accepting his guilty plea and sentencing him without regard to his mental illness, a fact that was allegedly disclosed to both his attorney and the probation officer; (2) denying a sentencing reduction based on his minor participation and cooperation with the government or departing downward due to extraordinary mitigating circumstances. The District Court further determined that the Court of Appeals' decision concerning the sentencing issues (role in the offense and failure to depart)

stands as the law of this case (**Docket No. 16**). The Court further found that De

Jesús' attempts to question the validity of his plea based on his mental state at the

time was a claim that could not be summarily dismissed based upon procedural

default  because the record attests to the fact that defendant had attempted to

supplement the record on appeal to that effect. *Id.* Accordingly, the District Court

referred the matter to the undersigned to develop the evidentiary record concerning

the validity of De Jesús' plea.

Pursuant to the undersigned's request, the government filed an additional

response to De Jesús' petition which contains the transcripts of the Change of Plea

Hearing and the Sentencing Hearing proceedings held on August 28, 1995 and

December 11, 1995, respectively (**Docket No. 22**).  The U.S. Probation Office

submitted under seal a copy of the presentence investigation report prepared for De

Jesús in the underlying criminal matter, and De Jesús' former attorney submitted

a sealed response (**Docket No. 25**).   An evidentiary hearing was held on

November 13, 2000. De Jesús and attorney Irma Valldejuli, former defense counsel

for De Jesús, testified at the evidentiary hearing. De Jesús waived his

attorney/client privilege with Ms. Valldejuli. At the hearing petitioner De Jesús was

represented by Attorney Manuel San Juan.

## II.    Findings of Fact

De Jesús was arrested on June 29, 1995, and charged by criminal complaint

on June 30, 1995   (Criminal No. 95-213(CCC), **Docket Nos. 1, 2**).   He was

subsequently indicted by the Grand Jury on July 5, 1997, on a two-count indictment

charging him with violations of 21 U.S.C. §§ 841(a)(1) and 925(A) and 18 U.S.C. § 2

for possession with intent to distribute and to import into the United States from

Colombia approximately two kilograms of heroin (*Id.* at **Docket No. 7**).  Thereafter

De Jesús was arraigned and entered a plea of not guilty (*Id.* at **Docket No. 9**).  A

detention hearing was held and De Jesús was ordered detained  pending trial (*Id.*

at **Docket Nos. 4 and 10**).  On August 17, 1995, De Jesús filed a motion informing the

Court he had entered into a plea agreement with the government (*Id.* at **Docket No.

17**) and had decided to plead guilty to Count Two of the indictment.  In exchange,

the government agreed to request the dismissal of Count One after sentence was

imposed on Count Two  (*Id.* at **Docket No. 20**).

   The Plea Agreement was signed by De Jesús, his attorney and attorneys for

the government (*Id.*).  On August 28, 1995, De Jesús appeared in Court and changed

his plea in accordance with the terms of the Plea Agreement (*Id.* at **Docket No. 21**).

   Thereafter, during the Fed.R.Crim.P. Rule 11 colloquy, the Court advised De

Jesús of his constitutional rights and that he would surrender those rights by

pleading guilty.  Tr. of Proceedings, Aug. 28, 1995, pp. 7-10, 16-17. The Court also

advised De Jesús of the penalties he could potentially face.  *Tr. of Proceedings*, Aug.

28, 1995, pp. 10-16. During the hearing the Court read to De Jesús the government's

version of facts  and asked De Jesús if they were true.  *Tr. of Proceedings*, Aug. 28,

1995, pp. 20-21. At the time, the facts of the crime that were read to and with which defendant agreed stated as follows:

De Jesús lived in Puerto Rico and had been a resident alien for approximately 14 years. *Tr. of Proceedings*, Aug. 28, 1995, p. 24. Prior to the date of the crime, De Jesús had been staying in Colombia for approximately two months. *Id.* at 24. While in Colombia, De Jesús was offered $10,000.00 by a person named Rodrigo to transport heroin into the United States. *Id.* at 24-25. On January 29, 1995, around 3:10 PM, De Jesús arrived at the Luis Muñoz Marín International Airport on board Copa flight 460 en route from Columbia to San Juan. *Id.* at 20-21. Upon arrival De Jesús was taken to a secondary inspection by Customs Inspector Rosa Pérez. *Id.* at 21. While checking De Jesús' baggage the inspector found two aerosol cans that weighed more than usual. *Id.* A white powdery substance determined to be heroin was found inside the cans. *Id.* at 22. De Jesús knew that heroin was inside the cans. *Id.* De Jesús then voluntarily surrendered his shoes because he knew the shoes as well contained heroin. *Id.* at 23. A chemical analysis by a DEA forensic chemist concluded the heroin was of 90 percent strength with a net weight of 788.4 grams. *Id.* at 26.

Evidence on record reflects that prior to sentencing De Jesús and his attorney met with U.S. Probation Officer Miriam Figueroa for a presentence interview (Criminal No. 95-213(CCC), Docket No. 25). During the interview De Jesús mentioned his encounter with certain unknown creatures and about the anxiety these

encounters had caused him (**Docket No. 25**).    A presentence investigation report ("PSR") was prepared by U.S. Probation Officer Figueroa.  In Part D of the PSR, under Section "Offender Characteristics, Mental and Emotional," the report states "[a]ccording to the defendant, although he has never sought psychological counseling, he feels he is in need of same since he has experienced anxiety episodes due to his present legal predicament."  The report contains no other indication or reference to petitioner's alleged mental incompetency or any other mental condition or to previous contacts with extraterrestrials.

During sentencing the Court inquired of counsel for De Jesús whether she had discussed with her client the contents of the presentence investigation report and she responded in the affirmative.  *Tr. of Proceedings*, Dec. 11, 1995, p. 2.

Prior to being sentenced De Jesús made a lengthy speech to the Court expressing remorse for the crime he committed.  *Tr. of Proceedings*, Dec. 11, 1995, p. 6.  De Jesús was sentenced on December 11, 1995, to a term of 78 months, a 5-year term of supervised release and no fine (*Criminal No.* 95-213(CCC), Docket No. 25)); *Tr. of Proceedings*, Dec. 11, 1995, p. 8.  Count One of the Indictment was dismissed (*Id.* at **Docket No. 28**).

De Jesús timely appealed the sentenced imposed upon him   (*Id.* at **Docket No. 27**).  Prior to the time that De Jesús' brief was filed he corresponded with his attorney and raised for the first time a new issue: that he was not psychologically prepared to be sentenced because of his encounters with the extraterrestrials

(**Docket No. 25**).  His attorney filed the brief without raising the issue (**Docket No. 25**).

On appeal, the appellant's brief contained the following issues: whether the district judge erred by denying a decrease in the offense level because of De Jesús' role as a minor participant in the offense and whether the district judge erred by not allowing a downward departure for De Jesús' good faith efforts to cooperate with the government in the case (**Docket No. 25**).  De Jesús, acting *pro se*, attempted to raise the psychological issue before the First Circuit Court of Appeals.  The United States Court of Appeals for the First Circuit affirmed the sentence in *United States v. De Jesús Granada*, No. 96-1224 (1st Cir. July 23, 1996).  The opinion makes reference to De Jesús' *pro se* motion before the appellate court seeking to supplement the record in which he submitted a letter from a prison psychologist.  It was understood that petitioner's motion called into question the validity of his guilty plea. *De Jesús Granada*, No. 96-1224, slip op. at 3.  The appellate court denied the motion to supplement the record on appeal.  Thereafter, defense counsel advised De Jesús of the decision and the availability of 28 U.S.C. § 2255 as a means of raising the issue of his emotional state at the time he pleaded guilty (**Docket No. 25**).

On April 29, 1997, De Jesús filed the instant petition under Title 28 U.S.C. § 2255 (**Docket No. 2**).  The government responded to the same on October 14, 1997 (**Docket No. 7**).  On November 13, 2000, an evidentiary hearing was held on petitioner's claim.

At the hearing De Jesús testified that in February and March of 1995 he was visited on three different occasions by extraterrestrials. He described the physical appearance of the extraterrestrials in detail. Initially De Jesús believed the beings were "good creatures," but at some point he believed them to be evil or demons. He claimed becoming deeply scared and affirms his encounters with the extraterrestrials affected his lifestyle thereafter,  this to include frequent consumption of alcohol.

Some time after his visits from the extraterrestrials De Jesús traveled to Colombia. While there he continued drinking 12 hours per day. He continued to receive payment of two government pensions in Colombia and used the money to drink. While he was "happy" he was approached by Rodrigo, an old acquaintance of his, who asked him to transport heroin into the United States. Inasmuch as he was unemployed and in a strained economic situation, he agreed to do so for a fee of $10,000.00. While attempting to import the heroin into Puerto Rico he was arrested at the Luis Muñoz Marín International Airport.

De Jesús testified that he was aware of the facts and events related to the transportation of heroin and was clear as to his guilt, but claimed he did not know what was going on around him or what were the severe implications (sanctions) of his actions. Once arrested, De Jesús attempted to cooperate with the government as he understood that such action would help him and have a significant impact in the outcome of his case.

Following De Jesús' arrest and the filing of criminal charges, he was provided with the assistance of court-appointed attorney, Irma Valldejuli. Petitioner claims he informed Ms. Valldejuli and subsequently the probation officer about his encounters with the extraterrestrials. Reportedly, his wife also told Ms. Valldejuli and the probation officer about his encounters and avers that she conveyed to both her belief that he (De Jesús) needed psychiatric help. De Jesús testified that at the time he also believed that he needed psychiatric help.

De Jesús claims he had a final encounter with an extraterrestrial a few weeks before he pled guilty and while at MDC-Guaynabo. Based on articles he has read, De Jesús believes he may have a microchip in his body which was placed there by the aliens and which allows the aliens to track him. The microchip allowed the extraterrestrials to locate him at the Guaynabo jail. De Jesús claims he did not see the aliens while he was at the detention center, but they communicated by telepathy. In this communication the extraterrestrials told him not to tell anyone about his encounters and threatened that if he did tell there would be serious consequences (i.e., he could be sent to a military base).

De Jesús did not mention previous contacts with extraterrestrials to the presiding judge or his attorney at the time of his guilty plea because of his immense fear and the influence the extraterrestrials had over him and because he knew the government was working along with the extraterrestrials. De Jesús believed that the judge and the government could send him to an Air Force base where

extraterrestrial do also work and he would never again see the daylight. De Jesús now claims he no longer fears to speak about the extraterrestrials because for the past five years he has been under psychiatric care and takes medications for fear and to sleep. While incarcerated he has also undergone treatment for his chronic alcoholism problem.

De Jesús testified that when he pled guilty he was in a weak mental state and did not understand what was going on. However, he remembers filling out the Petition to Enter a Plea of Guilty (Criminal No. 95-213(CCC), Docket No. 19). At the hearing he also agreed and acknowledged that the answers given in said Petition were correct. When the Petition was once again shown to him, he also acknowledged that it is his handwriting on the document. Furthermore, De Jesús testified that he then understood the charges, understood that he was in federal prison, understood that if he did not plead guilty his attorney would be there to defend his case, understood the possible penalties, and understood the consequences of pleading guilty (Criminal No. 95-213(CCC), Docket No. 38, pp. 7-10). Finally, De Jesús testified that his attorney had told him that if he pled guilty the sentence would be less and this influenced his decision to plead guilty. He stated that at the time he pled guilty and was subsequently sentenced, he was very submissive and let himself be guided by his attorney. Thus, when counseled to plead guilty, he did. When specifically questioned, De Jesús testified that he pled guilty because his attorney placed pressure upon him to plead guilty. He testified, however, that he did not understand the seriousness and consequences of pleading guilty because of his mental

incompetency or mental illness. De Jesús further testified that at the time he pled guilty he was "feeling really bad in the head" and was physically ill.

De Jesús' former defense counsel, Irma R. Valldejuli, does not deny that De Jesús relayed to her his experiences with unknown creatures nor did she discard them as unreal or incredible (**Docket No. 25**). Based upon their numerous personal meetings and the numerous letters De Jesús authored to Ms. Valldejuli, her perception during the time she represented him was that he was fully aware of what was happening during the criminal proceedings (**Docket No. 25**). Further, he actively participated during all stages of the case irrespective of his alleged encounters with extraterrestrial (**Docket No. 25**).

Indeed, at the November 13th hearing, Ms. Valldejuli testified that she remembers that De Jesús informed her of his previous encounters with aliens. Reportedly, she did not pass judgment on De Jesús and she did not find that his encounter with extraterrestrials affected his competence to understand the charges or evidence brought against him, or the potential penalties to which he was exposed, the guilty plea consequences and the information she provided to De Jesús. Nor did the alleged encounters impair his ability to assist in his defense. Counsel for petitioner believed he understood the proceedings and the functions or roles of the various persons involved in the case, such as the judge, the prosecutor and his defense attorney. She further testified that she had many conversations with De Jesús during which they engaged in "two-way conversations," that is, his

questions were coherent and his answers to questions were also coherent and responsive. More so, at all times he was aware of the positive impact that his cooperation with the government could have had in his sentence. He began to provide cooperation regarding his case, his involvement with his contacts in Colombia, and then looked for and provided information about events he learned about at MDC-Guaynabo.

There was nothing to indicate to her nor was it ever claimed that the aliens had caused De Jesús to transport drugs, but rather that De Jesús was in economic duress and that he was offered money to transport drugs. Further, she firmly believed De Jesús understood the consequences of his acts. She also testified that De Jesús clearly understood the benefits of pleading guilty and recalled that De Jesús insisted in that he wanted to cooperated with the government because he knew that cooperation would reduce his sentence. Indeed, Ms. Valldejuli testified that at some point in time De Jesús met and was debriefed by agents in an effort to provide information so that he might be able to enter into a cooperation agreement with the government. During this session in particular, De Jesús was relevant responsive and coherent. He was able to narrate factual events and "did most of the talking." Ultimately, however, De Jesús did not enter into a cooperation agreement with the government. Ms. Valldejuli's assessment of the case was that there was not much of a defense as De Jesús had confessed at the time the heroin was discovered at the airport. Counsel explained that De Jesús was depressed because

he was aware that upon sentencing he would be most likely deported, separated from his family and former life. However, his depression was no different from that experienced by other defendants counsel Valldejuli had represented. More so, counsel Valldejuli believed De Jesús had an alcohol problem and that is why at sentencing she asked that he be given alcohol treatment. While conscious that alcoholism may cause an individual to experience delirium and imagine certain thing, it was her opinion after ten years of experience in the defense bar, that De Jesús was not suffering from a mental illness or defect that affected his competence to stand trial and much less that would have raised doubts or suspicion on whether a mental evaluation was necessary.

Psychological records provided to the Court indicate that De Jesús has been seen for ongoing supportive counseling since February 29, 1996, shortly after his arrival at USP-Ft. Dix upon being sentenced (**Docket No. 2**, Ex. B). A letter authored by Clinical Psychologist Alan J. Lee, dated May 15, 1996, states that De Jesús had experienced moderate distress subsequent to three encounters with outer space aliens in February and March of 1995. *Id.* These alleged encounters occurred prior to the time that De Jesús committed the crimes for which he was charged and convicted. As of May 15, 1996, De Jesús continued to experience some episodes of depressed and anxious mood, although he generally had a difficult time expressing his feelings and instead he frequently presents with an upbeat mood that is occasionally interrupted by tearfulness. *Id.* An April 21, 1997, report authored by the

same psychologist indicates that as counseling continued it became apparent that

De Jesús suffered ongoing anxiety, worry and depression about his current and past

experiences. *Id.* To date De Jesús has had continued treatment and his

psychological records indicate a diagnosis of delusional disorder (**Docket No. 20**).

## II    Conclusions of Law

Pursuant to 28 U.S.C. § 2255

> A prisoner in custody under sentence of a court established
> by Act of Congress claiming the right to be released upon
> the ground that the sentence was imposed in violation of
> the Constitution or laws of the United States, or that the
> court was without jurisdiction to impose such sentence, or
> that the sentence was in excess of the maximum
> authorized by law, or is otherwise subject to collateral
> attack, may move the court which imposed the sentence to
> vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

Once sentence has been imposed, a plea may be set aside only on direct

appeal or by motion under 28 U.S.C. § 2255. *United States v. Noriega-Millán*, 110

F.3d 162, 166 (1st Cir. 1997). That is so because "[a] defendant does not enjoy an

absolute right to withdraw a plea of guilty, once it has been entered." *United States

v. Miranda-Santiago*, 96 F.3d 517, 522 (1st Cir. 1996) (*citing United States v. Isom*, 85

F.3d 831, 834 (1st Cir. 1996)). A defendant, who never sought to withdraw his plea

before the district court and challenges it for the first time on collateral attack under

a § 2255 motion, bears a high hurdle. The defendant must come forward with

sufficient evidence to demonstrate "a fundamental defect which inherently results in a complete miscarriage of justice," *Hill v. United States*, 368 U.S. 424, 428 (1962).

### A. Competency

De Jesús maintains that at the time of his guilty plea he was deprived of psychological counseling and medication which rendered him incompetent to voluntarily plead guilty. He asserts that he was legally incompetent and mentally and medically ill to "stand a guilty plea" (**Docket No. 2**, ¶ 12. k.). Given the foregoing reasons, the undersigned rejects De Jesús' claim that he was not competent at the time he pleaded guilty.

The constitutional guarantee of due process requires that the trial of an accused be conducted only when he is mentally competent. *See Cooper v. Oklahoma*, 517 U.S. 348 (1996); *Medina v. California*, 505 U.S. 437, 453 (1992). This principle is equally true with regard to a plea of guilty. *See Godinez v. Moran*, 509 U.S. 389, 400 (1993). In order to be competent, the accused must possess: (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; and (2) a rational as well as factual understanding of the proceedings against him. *Id.* at 396.

To support his claim of incompetency to render a guilty plea De Jesús submits a letter authored by Clinical Psychologist Alan J. Lee, dated May 15, 1996 (**Docket No. 2**, Ex. B). The letter states that De Jesús experienced moderate distress after three encounters with outer space aliens and fear of abduction by the aliens and the

government. The letter also relates that as of May 15, 1996, De Jesús had episodes

of depression and anxious mood. Nothing in the letter suggests that at the time De

Jesús pled guilty he lacked sufficient ability to consult with his lawyer with a

reasonable degree of rational understanding or that he lacked a rational as well as

factual understanding of the proceedings against him. The letter fails to even hint

that De Jesús was incompetent at the time he pled guilty or at the time the letter

was issued, but instead is more concerned with his depressed state resulting from

the alien encounters.

De Jesús' defense counsel, who met with and interviewed him on several

occasions, also believed that he was able to assist in the defense of his case and

was competent to plead guilty. She supports her position by the numerous letters

received from De Jesús before and after sentencing and during appeal. Further, she

testified that during their many conversations De Jesús asked coherent questions

and gave coherent and responsive answer to questions posed to him. Additionally,

De Jesús was aware that cooperation with the government would "help" him and

as a result De Jesús was insistent that he cooperate with the government. At no

time did she believe that De Jesús did not understand the proceedings, the charges

brought against him or the possible penalties. De Jesús so corroborated and

admitted during cross-examination at the evidentiary hearing.

The record simply does not support De Jesús' position that he was not

competent to plead guilty. Granted, his extraterrestrial experiences are out of the

ordinary and certainly have caused De Jesús distress, as evidenced by his psychological records. Said experiences, do not, however, automatically relegate one to the level of incompetency or constitute evidence of mental illness.

There is evidence on record that further dispels petitioner's claim. For example, during the Rule 11 colloquy (Change of Plea Hearing), the Court inquired on whether petitioner had received any mental treatment, had any mental problems, whether he was feeling well or had taken any medications, drugs or alcohol that could impair his competency. No such indicators were present. De Jesús was able to participate in the Rule 11 colloquy without being assisted by a court interpreter or translator.

During the hearing the following colloquy took place between De Jesús and the Court:

> **THE COURT:**        Mr. De Jesus, before I accept your plea of guilty I will be asking you questions this afternoon to make sure that you are pleading intelligently, voluntarily, with knowledge of your rights and of the consequences of pleading guilty to a criminal offense. So at any time, sir, that you don't understand a question I ask of you, if you want to consult with Ms. Valldejuli before you answer any questions, please feel free to let me know and I will allow you to consult or clarify your doubts.
>
> **THE DEFENDANT:**        I will.

Tr. of Proceedings, Aug. 28, 1995, pp. 3-4.

| | |
|---|---|
| **THE COURT:** | Have you been treated for any mental disorder or emotional condition? |
| **THE DEFENDANT:** | No, I haven't. |
| **THE COURT:** | Or for narcotic drug addiction? |
| **THE DEFENDANT:** | No. |
| **THE COURT:** | Do you take any tranquilizers for a nervous condition on your own or prescribed by a physician? |
| **THE DEFENDANT:** | No. |
| **THE COURT:** | Have you taken any drugs, medicine or pills or drunk any alcoholic beverages during the past 48 hours? |
| **THE DEFENDANT:** | Yes, right now I am taking some medicine for high blood pressure, for diabetes and arthritis. |
| **THE COURT:** | Do you feel well, and alert now? |
| **THE DEFENDANT:** | I do. |
| **THE COURT:** | Do you know why you are here in court? |
| **THE DEFENDANT:** | I do. |
| **THE COURT:** | Ms. Valldejuli and Mr. Vázquez, do you harbor any doubt as Mr. De Jesús Granada's competency to plead? |
| **MS. VALLDEJULI** | I have no question for his capacity for his appearance. |
| **THE COURT:** | The government? |
| **MR. VAZQUEZ:** | The government harbors no doubts as to the defendant's competence to plead today. |

**THE COURT:**            The Court finds the defendant competent to
                          plead.

Tr. of Proceedings, Aug. 28, 1995, pp. 5-6.

Additionally, the PSR contains no information highlighting the possibility of

a mental condition other than "anxiety resulting from petitioner's legal

predicament." Thus, whatever petitioner could have told the interviewing officer

raised no doubts concerning his mental condition.  Interestingly, it was petitioner

who informed the probation officer that it was economic distress prompted by his

alcoholism problem which resulted in or caused his involvement in the offense

charged.  Additionally, if we were to examine as well the transcripts of the

sentencing hearing, any doubts regarding petitioner's ability to understand the

nature and purpose of the proceedings held would be dispelled.

The undersigned rejects De Jesús' claim that he was incompetent at the time

he plead guilty and at the time of his sentencing.

**B. Voluntariness of Plea**

De Jesús maintains that his plea was involuntary because of his diminished

mental capacity.  The undersigned has already disposed of De Jesús' claim of

incompetency.  If a defendant's guilty plea has not been entered voluntarily, it has

been obtained in violation of due process and is therefore void. *Boykin v. Alabama*,

395 U.S. 238, 242 (1969); *United States v. McDonald*, 121 F.3d 7, 10 (1st Cir. 1997).

In order to satisfy the due process guarantee, a guilty plea must be entered "with

sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970); *United States v. Noriega-Millán*, 110 F.3d 162, 166 (1st Cir. 1997). In order to facilitate the entry of voluntary guilty pleas, Federal Rule of Criminal Procedure 11(c), in relevant part, requires district courts to proceed in the following manner prior to accepting a guilty plea:

> **(c) Advice to Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
>
> (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense; and
>
> (2) if the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant; and
>
> (3) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at  that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, and the right against compelled self- incrimination; and
>
> (4) that if a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial. . .

Compliance with the procedures of Rule 11 enables the district court to determine for itself the voluntariness of the plea and "facilitates that determination in any subsequent post-conviction proceeding based upon a claim that the plea was involuntary." *United States v. López-Pineda,* 55 F.3d 693, 696 (1ˢᵗ Cir. 1995) (citations omitted); *accord, United States v. Noriega-Millán*, 110 F.3d 162, 166 (1ˢᵗ Cir. 1997). If a *habeas* petitioner maintains that his statements at the Rule 11 hearing were inaccurate, he must "present valid reasons why he should be relieved of his statements". *Ouellette v. United States*, 862 F.2d 371, 375 (1ˢᵗ Cir. 1988) (quoting *Walker v. Johnston*, 312 U.S. 275, 286 (1941)); *accord, Panzardi-Alvarez v. United States*, 879 F.2d 975, 982 (1ˢᵗ Cir. 1989).

The record clearly reflects that the District Court clearly explained to De Jesús that he was pleading to Count One, the nature and elements of the offense, and that by pleading guilty he was giving up certain constitutional rights. The Court also thoroughly explained the meaning of concepts such as "willingly," "unlawfully" and "knowingly" and also explained the possible sentence and asked De Jesús if he had discussed the sentencing guidelines with his attorney. *Tr. of Proceedings*, Aug. 28, 1995, p. 19. At that time De Jesús indicated that he understood the sentencing guidelines. *Id.*

Without petitioner being in need of an interpreter, an exchange occurred during the change in plea hearing between De Jesús and the presiding District Judge which clearly demonstrates that De Jesús understood the proceedings. De

Jesús discussed before the Court, with particularity, a discrepancy on the issue of whether he had seen glue on the bottom of aerosol cans that were used when smuggling the heroin. *Tr. of Proceedings*, Aug. 28, 1995, pp. 21-22. Petitioner's statements then and throughout the hearing demonstrates he felt at ease while communicating with the Court.

Petitioner's statements to the Court are also corroborated by petitioners responses, in writing, to questions on the Petition to Enter a Guilty Plea, signed on August 28, 1995, and which alludes to the specific warnings required by Fed.R.Crim.P. Rule 11.

Accordingly, it is concluded that there is nothing before the undersigned that indicates that De Jesús did not understand his rights nor has anything been provided to cause the undersigned to disbelieve the statements made by De Jesús at the Rule 11 hearing at a time when he was under oath.

### C. Ineffective Assistance of Counsel

Although De Jesús does not state it specifically, it appears that he claims his attorney rendered ineffective legal assistance by failing to raise the issue of competency or the lack thereof before the trial court.     Additionally, at the evidentiary hearing he asserted having felt "pressured" into pleading guilty. As one of the grounds in support of his claim, De Jesús asserts that the probation officer and his defense attorney had complete knowledge of his "mental illness" and "lack of health" but said information did not appear in the presentence investigative report

(**Docket No. 2** , ¶ 12(k).   For the reasons provided below, the undersigned rejects the ineffective assistance of counsel claim.

The U.S. Supreme Court has set forth a two-prong test to determine whether a defendant has been denied a Sixth Amendment right to counsel. A conviction may be set aside because of ineffective assistance of counsel if: (a) considering all the circumstances, counsel's performance fell below an objective standard of reasonableness; and (b) there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984); *accord, Panzardi-Alvarez v. United States*, 879 F.2d 975, 982-83 (1st Cir.1989).   This standard applies to challenges to guilty pleas, as well as attacks on convictions resulting from trials. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  When a petitioner challenges a guilty plea on the grounds of ineffective legal assistance, in order to show prejudice he must prove that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59; *accord, United States v. Mateo*, 950 F.2d 44, 47 (1st Cir. 1991).   In a post-conviction proceeding, the burden is on the petitioner to demonstrate ineffective assistance by a preponderance of the evidence. *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1983).

There can be no deficiency on the part of counsel in failing to request a competency hearing when there is no evidence of incompetency. *McCoy v. Lynaugh*, 874 F.2d 954, 964 (5th Cir. 1989); *accord, Carter v. Johnson*, 131 F.3d 452,

464 (5th Cir. 1997). With regard to De Jesús' claim of incompetency, the undersigned has already determined that the record contains no evidence to support this claim. Indeed, the record supports the opposite conclusion. Nor has De Jesús adduced other evidence to support his claim of incompetency to plead guilty.

The undersigned finds that defense counsel's failure to raise the issue of competency did not constitute ineffective assistance of counsel. *See Wallace v. Ward*, 191 F.3d 1235, 1243-1244 (10th Cir. 1999) (where record reflected that petitioner had been examined several times during the preceding years and was always determined to be competent, and where his behavior during court proceedings did not suggest incompetency, trial counsel did not render ineffective assistance by failing to raise issue of competency); *Galowski v. Berge*, 78 F.3d 1176, 1180 (7th Cir. 1996) (trial counsel was not ineffective based on his failure to raise competency issue, where he arranged for psychiatric evaluation, which concluded that petitioner was competent; "Once [defense counsel] received [the psychiatrist's] report we find it difficult to imagine why he would have requested a hearing."). Upon reflection, perhaps defense counsel should have sought a psychological examination. However, nothing alerted defense counsel that De Jesús did not understand the criminal proceedings or the charges brought against him. He was able to assist his defense attorney and he took affirmative action to provide cooperation to the government. While De Jesús may have had encounters with extraterrestrials, those encounters did not render him incompetent.

Additionally, the record clearly contradicts petitioner's recent claims. At the Petition to Enter a Guilty Plea, specifically question No. 9, petitioner was asked: "If you have an attorney, are you satisfied with the job he has done for you?" He responded in the affirmative. Later, under paragraph No. 13 of the Plea Agreement, it is reflected that:

> The defendant Alejandro De Jesús Granada represents to the Court that he is satisfied with his attorney, Mrs. Irma Valldejuli, Esq., and indicates that she has rendered effective assistance. . . .

More so, during the Rule 11 colloquy, specifically at page 6, lines 10 to 21, it is reflected:

| THE COURT: | . . . Mr. De Jesús do you feel you have had enough time to discuss the case with your attorney? |
|---|---|
| THE DEFENDANT: | Yes. |
| THE COURT: | Has anything that your attorney said or done been interpreted by you as a pressure to plead guilty? |
| THE DEFENDANT: | No, I do that – I will do that voluntarily. |
| THE COURT: | Are you satisfied with her representation in this case? |
| THE DEFENDANT: | I am. |

*Tr. of Proceedings*, August 28, 1995, p. 6.

The record further reflects that a similar question was posed to petitioner at the sentencing hearing and once again he assured being satisfied with counsel.

### D. Sentencing - Mitigating Circumstances.

District courts are allowed to depart from the applicable Guideline range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." *Koon v. United States*, 518 U.S. 81, 93 (1996) (citing 28 U.S.C. § 3553(b). The last ground raised by De Jesús is that he is entitled to a sentence reduction pursuant to U.S.S.G. §5K2.0 for "mitigating circumstances of a kind." He asserts the bases for a downward departure are that the Court did not consider and was not placed on notice of his permanent legal residence status which because of said status he is deportable by reason of his narcotics conviction nor did the Court consider the psychological impact his incarceration has caused his elderly parents whom are over the age of 80 years. De Jesús' argument is without merit.

During sentencing counsel for De Jesús argued that "[b]ecause of the crime he committed he is aware that he will not see his parents much longer, because after serving his sentence he will be deported to Colombia and forbidden to enter this land again. His parents are all too old to travel to Colombia to see him again." *Tr. of Proceedings,* Dec. 11, 1995, p. 3. The Court was adequately advised of De Jesús status, that he would be deported and that De Jesús has elderly parents affected by their son's imprisonment. Regardless of De Jesús' apparent concession of deportability, that in and of itself is insufficient for a downward departure.

Indeed, the First Circuit has held, as a matter of law, neither the probability of

deportation nor an actual admission of deportability fall within the purview of §

5K2.0 to provide a sufficient basis or ground for a downward departure from the

sentencing guidelines. *United States v. Clase-Espinal*, 115 F.3d 1054, 1057 (1st Cir.

1997).

With regard to a reduction based on the effect of his incarceration on his

infirm, aged parents, the law clearly establishes that departures based on family

circumstances and responsibilities are discouraged. U.S.S.G. § 5H1.5  As this

district has noted, "[m]any defendants have family members who rely on them for

support, including elderly parents," and it was expected that De Jesús'

"incarceration would have a deleterious effect on the well-being" of his parents.

*Dishmey v. United States*, 929 F.Supp. 551, 554  (D.P.R. 1996).  De Jesús'

circumstances are not extraordinary nor so unusual as to merit a downward

departure.  *See United States v. Rushby*, 936 F.2d 41 (1st Cir. 1991) (defendant's

function as main breadwinner, caretaker of two young sons when his wife was

working, and helper to his grandmother are not unusual circumstances to justify

downward departure.

De Jesús simply is not entitled to relief pursuant to 28 U.S.C. § 2255.

**IV.   Conclusion**

After analyzing petitioner's allegations, the undersigned concludes that there

are no exceptional circumstances which if unresolved would result in a complete

miscarriage of justice.   Therefore, this Magistrate-Judge **RECOMMENDS** that

petitioner's petition pursuant to 28 U.S.C. § 2255 (**Docket No. 2**) be **DENIED and**

**DISMISSED.**

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B)

and Rule 504.3 of the Local Rules of Court.   Any objections to the same must be

specific and must be filed with the Clerk of Court **within ten (10) days** of its receipt.

Rule 510.1, Local Rules of Court; Fed. R. Civ. P. 72(b).   Failure to timely file specific

objections to the Report and Recommendation waives the right to review by the

District Court, and waives the right to appeal the District Court's order.   *United*

*States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford*

*Motor Co.*, 616 F.2d 603 (1st Cir. 1980).   The parties are advised that review of a

Magistrate-Judge's Report and Recommendation by a District Judge does not

necessarily confer entitlement as of right to a *de novo* hearing and does not permit

consideration of issues not raised before the Magistrate-Judge.   *Paterson-Leitch v.*

*Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

**SO RECOMMENDED.**

At San Juan, Puerto Rico, this 23rd day of March, 2001.

s/cs:to ( 2 )
attys/pts
in ICMS

APR -10 2001

**AIDA M. DELGADO-COLON**
**U.S. Magistrate-Judge**